IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

          Plaintiff-Respondent,

  vs.                                      CIVIL NO. 10-976 JC/LFG
                                              CRIM. NO. 07-1010 JC

HERBERT I. PERKINS,

          Defendant-Movant.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

This is a proceeding on a Motion to Vacate, Set Aside or Correct Sentence [Doc. 1][2] pursuant to 28 U.S.C. § 2255, filed October 15, 2010.  Defendant-Movant Herbert I. Perkins ("Perkins") challenges the judgment and sentence entered by the United States District Court for the District of New Mexico in United States v. Perkins, No. CR 07-1010 JC, on grounds of ineffective assistance of counsel.

The United States filed its Response [Doc. 7] on December 17, 2010, *nunc pro tunc* to November 5, 2010.  *See* Order Quashing Order to Show Cause and Permitting United States to File Its Response Nunc Pro Tunc [Doc. 8].  Perkins was allowed to file a reply no later than February 28, 2011 [Doc. 11], but neither filed a reply by that date nor sought an extension to file a late reply.[3] The Motion to Vacate is now fully briefed.

----

[1]Within fourteen (14) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the 14-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.

[2]References to document numbers (*e.g.*, "Doc. 1") are to documents filed in the civil action, Civ. 10-976 JC/LFG, unless the criminal action is specifically noted in the reference.

[3]The already granted Perkins one extension to file his reply that was originally due at the end of January 2011. [*See* Doc. 11.]

In his Motion to Vacate, Perkins appears to state four separate instances in support of the overall claim that his trial attorney was constitutionally ineffective. However, each of these instances is essentially a restatement of his assertion that trial counsel failed to put on an adequate defense by refusing to present certain evidence and witnesses related to his state of mind at the time of the crime for which he was convicted.

Perkins alleges that shortly before he committed the offenses, he suffered a severe head trauma for which he was hospitalized. He says he had been blacking out several times a day due to the head trauma and was "not in my right mind" and "didn't know what I was doing" at the time of the offenses. He alleges that counsel was ineffective and deprived him of a defense by refusing Perkins's request to subpoena doctors and obtain medical records and a recording of a 911 call, all of which he claims would have established the head trauma and its exculpatory effects. [Doc. 1].

### Factual and Procedural Background

Perkins was indicted by a grand jury on four counts stemming from the armed robbery of a convenience store in Albuquerque, New Mexico on July 31, 2007. He was charged with interference with commerce by threats or violence (*i.e.*, armed robbery of the store), and two counts of discharge of a firearm during the course of the robbery. He was also charged with being a six-time felon in possession of ammunition, which meant that in the event of conviction on any of the other three counts, the district court would be obliged to impose a mandatory sentence of life imprisonment. [Docs. 1, 29 in CR 07-1010].

Following a three-day trial, at which Perkins was represented by court-appointed counsel, the jury found him guilty on all counts. [Docs. 82, 84]. He was sentenced to life imprisonment on the armed robbery count, plus additional sentences of 780 months, ten years, and 25 years on the other counts, with all sentences to run consecutively. [Doc. 107]. The conviction was affirmed on appeal. United States v. Perkins, 342 F. App'x 403 (10th Cir. Aug. 21, 2009) (unpublished). The Supreme Court denied certiorari on January 11, 2010. Perkins v. United States, 130 S. Ct. 1098 (2010).

The following factual background is taken from the Tenth Circuit's opinion in Perkins's direct appeal:

> This case arises from the nighttime armed robbery of a convenience store in Albuquerque, during which defendant [Perkins] shot the two employees who were present in spite of the fact that they had been cooperating. Fortunately, both victims survived. Defendant was accompanied by his nephew, Juan Castillo, who eventually entered into a plea agreement with the government and testified against defendant at trial.
>
> Perkins and Castillo entered the store at about 4 a.m., entering from opposite sides. Each was armed. Adam Foucher [one of the store clerks] saw Perkins first and apparently immediately suspected a robbery, probably because Perkins pulled a bandana over his face after entering. Foucher told Perkins that he could take anything he wanted. As Foucher was pointing out the keys to one of the two safes, Perkins shot him in the leg. The other clerk, Codie Abramson, likewise was helping the robbers get money from one of the safes when Perkins shot him in the stomach. Abramson nevertheless got $200 out of the safe and gave it to Perkins or Castillo. The robbers also got the money from the cash registers and several cartons of cigarettes.
>
> Five of six motion-activated security cameras captured portions of the robbery. The store manager, who had been in route to the store when she heard of the robbery, reproduced these segments on a single disc and provided that disc to the police very quickly after the robbery. Still photographs were made from the disc and were distributed to television stations. Authorities received some information from the news coverage of the robbery and obtained an arrest warrant for Perkins, who was arrested the next day. Unopened cartons of cigarettes were found in a bag in the trunk of his car.
>
> At the police station, Perkins waived his Miranda rights and tried to implicate Castillo. Perkins first denied that he was shown in the surveillance video. He later admitted that he had been at the scene. He then said that the robbery had not gone as planned because Castillo had gone "haywire," and that the plan had been for him, Perkins, to provide backup for Castillo. Perkins said that he shot the first clerk [*i.e.*, Foucher] to calm Castillo down after Castillo went crazy and started firing his gun.
>
> At trial, both of the employees present at the robbery identified Perkins as the robber who shot them. The surveillance videos were admitted in evidence. Apparently the digital images in these videos were quite clear. The government presented evidence of the statements made by Perkins after his arrest, as described in the previous paragraph. Also, Castillo testified about the robbery, and he also testified that Perkins had shot the two employees.

Perkins, *supra*, 342 F. App'x at 404.

## Discussion

Perkins claims that his court-appointed trial counsel was constitutionally ineffective. To establish a claim of ineffective assistance of trial counsel, Perkins must make a two-pronged showing: (1) that his attorney's performance was constitutionally defective; and (2) that the deficient performance prejudiced his defense in that counsel's errors were so serious as to deprive him of a fair trial with a reliable result. Strickland v. Washington, 466 U.S. 668, 687 (1984).

To prove deficient performance, Perkins must overcome the presumption that counsel's conduct was constitutionally effective. Duvall v. Reynolds, 139 F.3d 768, 777 (10th Cir.), *cert. denied*, 525 U.S. 933 (1998). Scrutiny of counsel's performance must be "highly deferential" and must avoid the distorting effect of hindsight. Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995), *cert. denied*, 516 U.S. 1062 (1996). In order to be found constitutionally ineffective, counsel's performance must be shown to have fallen below an objective standard of reasonableness. Strickland, at 687-88. In addition, the burden is on Perkins to show prejudice – that is, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694.

Perkins says he asked his attorney to obtain certain records and to call certain doctors as witnesses, but counsel refused to do so. Perkins alleges that the doctors would have testified, and the records would have shown, that he was suffering from a severe case of head trauma at the time of the robbery and was "not in his right mind." He further alleges that counsel should have obtained records of a call he made to 911 a day before the robbery to show that Perkins "didn't know what he was doing" on the day he committed the offenses. [Doc. 1, at 4, 5, 7, 8].

The United States invites the Court to "apply a generous dose of skepticism to [Perkins's] belated claim" [Doc. 7, at 14] that he was suffering from head trauma at the time of the robbery, and that he asked his attorney to raise this issue as part of his defense. The government points out that Perkins never raised the issue at any time in the criminal proceedings prior to the filing of his

4

Motion to Vacate under § 2255, and that Perkins was not shy about proclaiming his rights and complaining about his lawyer as evidenced *inter alia* by the fact that he stood up without permission in the middle of trial and, in the presence of the jury, recounted his attorney's alleged failings.

The Court need not resolve the questions of whether Perkins actually sustained head trauma and whether he actually told his trial counsel about the alleged trauma and resulting incapacity, because even if counsel had this information, he could reasonably have made a strategic determination that the information would not have advanced the defense.

The Tenth Circuit takes the position that a defendant's mental incompetency at the time the offense was committed, as opposed to the time of trial or plea, is not open to collateral attack in a § 2255 proceeding. Clay v. United States, 303 F.2d 301, 302 (10th Cir. 1962), *cert. denied*, 372 U.S. 970 (1963). *See also*, 7 A.L.R. Fed 565 (1971): "Where a defendant has sought to have his conviction and sentence vacated or set aside under § 2255 on the independent ground that he was incompetent at the time of the commission of the offense, the courts have consistently denied such relief."

In addition, the government points out that Perkins had numerous opportunities to raise this issue at several points during the course of the criminal proceedings, but he failed to mention it until he filed his § 2255 Motion. Specifically, Perkins failed to mention head trauma, mental incapacity, or temporary insanity at the time he was questioned by the police, at the pretrial hearing where he asked to have a different attorney, at the time of jury selection when he again asked to have different counsel, at the time he stood up in the middle of trial and complained directly to the jury about his attorney, at the time of the presentence interview, at the time he submitted a Memorandum in Aid of Sentencing, and at the sentencing hearing itself when he told the Court he took full responsibility for his actions and expressed remorse for the injuries sustained by the store clerks. [Doc. 7, at 14-20]. The government argues that Perkins' failure to mention alleged head trauma at any of these tuning points tends to demonstrate that the alleged head trauma never happened.

Be that as it may, this case can be resolved on the basis that Perkins fails to overcome the presumption that his attorney's alleged actions, in refusing Perkins's request to formulate a defense around alleged head trauma, were anything other than sound trial strategy. In addition, he does not sustain his burden of showing that the outcome of the trial would have been different if counsel had raised such a defense.

18 U.S.C. § 17 provides as follows:

> (a) Affirmative defense.--It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. *Mental disease or defect does not otherwise constitute a defense.*
>
> (b) Burden of proof.--The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

Id. (emphasis added).

Thus, in order for the evidence of alleged head trauma to have any relevance to his defense, the evidence would have to demonstrate clearly and convincingly that Perkins was "unable to appreciate the nature and quality or the wrongfulness of his acts" as a result of the trauma. Perkins identified nothing in the record to support his claim that alleged head trauma prevented him from fully comprehending the wrongfulness of his conduct at the time of the robbery. Indeed, there is overwhelming evidence on the record that Perkins was well aware of the nature, quality and wrongfulness of his acts.

In the police interview shortly after the robbery, Perkins acknowledged that he took part in the robbery, recounted details about the event which demonstrated he knew where he was and what he was doing at the time, conceded that the clerks were complying with the orders to hand over money, stated he shot one of the clerks in order to calm down his accomplice, and told the police he felt sorry for the people who were shot and "sorry for the fucking shit I did." [Doc. 145 in Cr. 07-1010 JC, Ex. 1].

6

In light of this evidence, trial counsel attorney could reasonably have determined that the jury would not have believed an allegation that Perkins did not know what he was doing at the time of the robbery and shootings or did not know he was doing something wrong.  Counsel could have concluded that putting forth such an allegation would smack of desperation and might actually harm the defense more than it would help.

Perkins asks the Court to conduct an evidentiary hearing into his claim that his attorney ignored an incapacitating head injury.  The Court declines this request.  Perkins's situation stands in stark contrast to that of the defendant in United States v. Ringer, 139 F. App'x 969 (10th Cir. 2005) (unpublished), in which the Tenth Circuit held it was error for the District Court to refuse to conduct an evidentiary hearing on defendant's claim in a § 2255 proceeding that his trial counsel was ineffective for failing to investigate the possibility of an insanity defense.  The record in that case was replete with evidence that Ringer was suffering from bipolar disorder and had been hospitalized on numerous occasions for his mental health condition which, if he did not comply with medication, rendered him combative, assaultive and psychotic.

In Ringer, the Tenth Circuit held it was error to dismiss the § 2255 petition without an evidentiary hearing, in light of "the fact that Ringer has a long history of mental illness – including bouts with psychosis and auditory hallucinations – and that he apparently was discharged from a mental institution with two weeks of medication a month prior to committing the bank robberies." Ringer, supra, at *3.  There is no such history in this case; rather, all indications are that Perkins knew what he was doing, and knew it was wrong at the time he did it.

An evidentiary hearing in a case brought under 28 U.S.C. § 2255 is appropriate "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."  The petitioner bears the burden of establishing that he is entitled to relief and to an evidentiary hearing, and the Court must "take petitioner's factual allegations 'as true, except to the extent that they are contradicted by the record or are inherently incredible, and to the extent that they

are merely conclusions rather than statements of fact.'" <u>Otero-Rivera v. United States</u>, 494 F.2d 900, 902 (1st Cir. 1974).

The Court is cognizant that it cannot simply decide to give no credence to Perkins's statements that he was suffering from head trauma and that his attorney refused to raise this issue as part of the defense.  However, the Court agrees with the government that this assertion is contradicted by the record and, in any event, a defense based on alleged head trauma would have been unavailing, indeed inadvisable, in light of the strong evidence that Perkins was aware of his actions and had knowledge of wrongdoing.  The Court finds that an evidentiary hearing is not warranted in this case.

In conclusion, Perkins simply fails to make the requisite two-pronged showing that his attorney's performance was constitutionally defective and that the deficient performance was so prejudicial as to deprive him of a fair trial with a reliable result.  <u>Strickland v. Washington</u>, *supra*.

**<u>Recommended Disposition</u>**

That the Motion to Vacate, Set Aside or Correct Sentence be denied and this action be dismissed with prejudice.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge